IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 21-cv-02016-RM-NYW

CHRISTIAN E. SPARKS,

    Plaintiff,

v.

UNIVERSITY OF COLORADO, DENVER CAMPUS, OFFICE OF EQUITY, ANSCHUTZ CAMPUS, through its Board, THE BOARD OF REGENTS OF THE UNIVERSITY OF COLORADO,

    Defendant.

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Magistrate Judge Nina Y. Wang

This matter is before the court on Defendant's Motion to Dismiss Plaintiff's Complaint Under F.R.C.P. 12(b)(1) and 12(b)(6) (the "Motion" or "Motion to Dismiss") [Doc. 14].[1] This court considers the Motion pursuant to 28 U.S.C. § 636(b), the Order Referring Case dated August 5, 2021, [Doc. 6], and the Memorandum dated September 24, 2021 [Doc. 11]. The court concludes that oral argument will not materially assist in the resolution of this matter. Upon review of the Motion, the related briefing, and the applicable case law, I respectfully **RECOMMEND** that the Motion to Dismiss be **GRANTED in part** and **DENIED in part**.

### BACKGROUND

This court draws the following facts from the Employment Discrimination Complaint (the "Complaint"), [Doc. 1], and presumes they are true for purposes of the Motion to Dismiss. On or

---

[1] Where the court refers to the filings made in Electronic Case Filing ("ECF") system in this action, it uses the convention [Doc. ___]. For purposes of clarity, the court identifies the page number as assigned by the ECF system.

around December 31, 2018, Plaintiff Christian E. Sparks ("Plaintiff" or "Mr. Sparks") applied for a position as a Civil Rights Investigator with the Office of Equity at the Anschutz Campus of the University of Colorado ("Defendant" or the "University"). [*Id.* at 4]. At the time of his application, Mr. Sparks had nearly 20 years of investigative experience with the United States Departments of Transportation, State, and Veterans Affairs, during which he investigated "assault, sexual assault, Title VII, fraud, human trafficking, child abuse, identity theft, homicide, international parental kidnapping, [and] professional misconduct." [*Id.*]. The job posting stated that the minimum qualifications for the position included (1) a bachelor's degree or a combination of education and other experience that may be substituted for a bachelor's degree; and (2) one year of professional-level experience conducting investigations, writing fact-finding reports, and developing and delivering training. [*Id.*]. The job posting also provided "preferred qualifications," including (1) a master's or professional-level degree in a related field; (2) three years of investigative experience; (3) experience in a higher-education or civil-rights/equal-opportunity field; (4) training in Title IX or Title VII investigations; and (5) training in sexual assault investigations. [*Id.*].

According to Mr. Sparks, he possessed "directly and indirectly the qualifications sought and necessary to assume the position advertised," [*id.*], but he was not selected to interview for the open position. [*Id.* at 3]. According to Plaintiff, a review the Office of Equity's website on March 26, 2019 demonstrated that the Office of Equity employed eight female employees, with the only male employee in the Office being the Title IX Director. [*Id.* at 6]. Another review of the website on September 19, 2019 also revealed that the Office of Equity employed eight women in addition to the male Title IX Director. [*Id.*].

2

Furthermore, Plaintiff alleges that the University has represented that the Office of Equity received 32 applications for the Civil Rights Investigator position. [*Id.*].[2] The University has further stated that it used a "screening matrix" to select four candidates—three women and one man—for interviews. [*Id.* at 5]. All four candidates were invited back for a second round of interviews, and three second interviews were conducted after one candidate voluntarily withdrew from consideration. [*Id.*]. Two candidates were invited for a second interview, and the position was offered to a 26-year-old woman, who accepted the offer of employment. [*Id.*].

According to Plaintiff, the University has stated that "only two candidates met all five preferred qualifications," and accordingly, the Office of Equity reviewed "any candidate who met at least three preferred qualifications" so as to create a sufficiently competitive pool of applicants. [*Id.*].[3] Plaintiff contends that the University's assertions regarding its applicant pool are "intrinsically incredible and facially implausible" because he exceeded the minimum qualifications for the position. [*Id.*]. Mr. Sparks alleges that "the University has repeatedly and historically granted the female sex/gender *de facto* a form of preselected preferential discriminatory 'super' protection, even when it is non-meritorious [sic]." [*Id.*]. He asserts that he has sustained "substantial lost wages and future retirement as a result of the University's discriminatory practice against his gender and age." [*Id.* at 6].

Mr. Sparks initiated this civil action against Defendant on July 26, 2021. *See generally* [*id.*]. In his Complaint, Mr. Sparks asserts two claims against the University: one claim of

---

[2] In his Response, Mr. Sparks has attached the University's response to his EEOC charge, which appears to be the source of the quotes included in the Complaint. [Doc. 16 at 13-14].

[3] Again, Mr. Sparks does not explain when the University made this statement. The court notes, however, that the quote does not appear to have been pulled from the University's response to Plaintiff's EEOC charge submitted to the court, which appears to be missing a page. *See* [Doc. 16 at 13-15].

employment discrimination under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000 *et seq.*, and one claim under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.* [*Id.* at 2]. He requests "injunctive relief as well as back pay, front pay, [and] liquidated compensatory and punitive damages," but does not specify the injunctive relief sought. [*Id.* at 6-7]. On September 24, 2021, Defendant filed the instant Motion to Dismiss, arguing that Plaintiff's claims should be dismissed pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. [Doc. 14]. First, the University argues that Plaintiff's ADEA claim should be dismissed for lack of subject matter jurisdiction because it is barred by the Eleventh Amendment. [*Id.* at 2-3]. In addition, the University maintains that Plaintiff's Title VII fails to state a claim upon which relief could be granted pursuant to Rule 12(b)(6). [*Id.* at 3-7]. In response, Mr. Sparks concedes that his ADEA claim is barred, *see* [Doc. 16 at 2], but asserts that his Complaint contains sufficient factual allegations to state a Title VII claim. [*Id.* at 3]. This matter is ripe for recommendation, and I consider the Parties' arguments below.

## LEGAL STANDARDS

**I.  Rule 12(b)(1)**

Federal courts are courts of limited jurisdiction and, as such, "are duty bound to examine facts and law in every lawsuit before them to ensure that they possess subject matter jurisdiction." *Wilderness Soc. v. Kane Cty.*, 632 F.3d 1162, 1179 n.3 (10th Cir. 2011) (Gorsuch, J., concurring); *see also Cellport Sys., Inc. v. Peiker Acustic GMBH & Co. KG*, 762 F.3d 1016, 1029 (10th Cir. 2014) (explaining that courts have an independent obligation to ensure subject matter jurisdiction exists). Pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, a party may bring either a facial or factual attack on subject matter jurisdiction, and a court must dismiss a complaint if it lacks subject matter jurisdiction. *See Pueblo of Jemez v. United States*, 790 F.3d 1143, 1147 n.4

4

(10th Cir. 2015).  The burden of establishing jurisdiction rests with the party asserting jurisdiction.  *See Kline v. Biles*, 861 F.3d 1177, 1180 (10th Cir. 2017).

## II.      Rule 12(b)(6)

Under Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  In deciding a motion under Rule 12(b)(6), the court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff." *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010) (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)).  A plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Rather, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (explaining that plausibility refers "to the scope of the allegations in a complaint," and that the allegations must be sufficient to nudge a plaintiff's claim(s) "across the line from conceivable to plausible.").  The court must ultimately "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

## III.     Pro Se Pleadings

In applying the above principles, this court is mindful that Mr. Sparks proceeds pro se and the court thus affords his papers and filings a liberal construction.  *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).  But the court cannot and does not act as his advocate, *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991), and applies the same procedural rules and substantive law to Plaintiff

5

as to a represented party. *See Murray v. City of Tahlequah*, 312 F.3d 1196, 1199 n.2 (10th Cir. 2008); *Dodson v. Bd. of Cty. Comm'rs*, 878 F. Supp. 2d 1227, 1236 (D. Colo. 2012).

## ANALYSIS

**I.    Eleventh Amendment Immunity**

The University first argues that Mr. Sparks's ADEA claim is barred by the Eleventh Amendment.  *See* [Doc. 14 at 2].  Mr. Sparks agrees that Defendant is immune from liability under the Eleventh Amendment with respect to his ADEA claim and "stipulate[s]" to dismissal of the claim.  [Doc. 16 at 2-3].  Mr. Sparks asserts, however, that "if Defendant has received grants or contracts under the ADEA with stipulations requiring compliance [with] the ADEA, then Defendant may have agreed to a waiver of [its Eleventh] Amendment immunity."  [*Id.* at 2].  On this basis, Mr. Sparks explains that he stipulates to the dismissal of his claim *without prejudice*, "to allow the reintroduction of the [ADEA claim] if discoverable material facts are identified" during discovery.  [*Id.* at 2-3].  Although Mr. Sparks concedes dismissal of his ADEA claim, because Plaintiff proceeds pro se, the court will briefly address the applicability of the Eleventh Amendment here.

The Eleventh Amendment to the United States Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. Const. amend. XI.  "The Eleventh Amendment is a jurisdictional bar that precludes unconsented suits in federal court against a state and arms of the state." *Peterson v. Martinez*, 707 F.3d 1197, 1205 (10th Cir. 2013); *see also Colby v. Herrick*, 849 F.3d 1273, 1276 (10th Cir. 2017) ("The Eleventh Amendment precludes anyone from suing an arm of the state or asserting a damage claim against state officers in their official capacities.").

6

Courts have concluded that the University of Colorado is an arm of the state of Colorado. *See Dermansky v. Univ. of Colo.*, 445 F. Supp. 3d 1218, 1221 (D. Colo. 2020); *Churchill v. Univ. of Colo. at Boulder*, 285 P.3d 986, 998 (Colo. 2012).

Eleventh Amendment immunity may be abrogated by Congress or waived by the state. *Ross v. Bd. of Regents of The Univ. of N.M.*, 599 F.3d 1114, 1117 (10th Cir. 2010). Plaintiff does not identify any "express and unequivocal" consent to suit on the part of Colorado, *see* [Doc. 16]; *see also V-1 Oil Co. v. Utah State Dep't of Pub. Safety*, 131 F.3d 1415, 1421 (10th Cir. 1997), and the Supreme Court has expressly held that the ADEA does not operate to validly abrogate state sovereign immunity. *See Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 91 (2000); *see also Migneault v. Peck*, 204 F.3d 1003, 1004 (10th Cir. 2000). It is thus "well settled that the Eleventh Amendment bars suits against the states under . . . the ADEA." *Zimmerman v. Univ. of Utah*, No. 2:13-cv-01131-JNP-DBP, 2016 WL 6839371, at *3 (D. Utah Nov. 21, 2016). Because Mr. Sparks's ADEA claim is barred by the Eleventh Amendment, and the court lacks jurisdiction over the claim. *Peterson*, 707 F.3d at 1205. I thus respectfully **RECOMMEND** that the Motion to Dismiss be **GRANTED** insofar as it seeks dismissal of Plaintiff's ADEA claim and that the claim be **DISMISSED without prejudice** for lack of subject matter jurisdiction.[4]

## II. Failure to State a Claim

Next, the University argues that Mr. Sparks's Complaint contains insufficient factual allegations to state a Title VII discrimination claim. [Doc. 14 at 3]. Specifically, Defendant frames

---

[4] "Because Eleventh Amendment immunity is jurisdictional," dismissal on this basis is without prejudice. *Colby v. Herrick*, 849 F.3d 1273, 1278 (10th Cir. 2017). In recommending dismissal of this claim without prejudice, the court does not pass on Mr. Sparks's assertions that "if Defendant has received grants or contracts under the ADEA with stipulations requiring compliance of implementation of the ADEA, then Defendant may have agreed to a waiver of [its Eleventh] Amendment immunity." *See* [Doc. 16 at 2].

Plaintiff's claim as a "reverse discrimination" claim, as Mr. Sparks "is not a member of an historically disadvantaged group." [*Id.* at 4]. The University argues that Plaintiff has failed to allege "background circumstances that would show the University is 'one of those unusual employers who discriminate against the majority.'" [*Id.* at 3]. In response, Mr. Sparks refutes the University's classification of his claim as a "reverse discrimination" claim. [Doc. 16 at 3]. Mr. Sparks argues that women "are historically the favored group" within the Office of Equity, and thus, his claim is a straightforward discrimination claim. [*Id.*]. Plaintiff maintains that his allegations are sufficient to state a discrimination claim under Title VII. [*Id.* at 3-6].

### A.  Applicable Standards

Under Title VII, it is unlawful for an employer "to fail or refuse to hire . . . any individual, . . . because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). To establish a prima facie case of discrimination based on a failure to hire, plaintiffs traditionally must establish (1) the plaintiff is a member of a protected class; (2) the plaintiff was qualified for an employment position; (3) the plaintiff was not selected for the position; and (4) the position either remained open or was filled by a person who was not a member of the protected class. *Stahl v. Bd. of Cty. Comm'rs of the Unified Gov't of Wynandotte Cty.*, 101 F. App'x 316, 320 (10th Cir. 2004); *Reynolds v. Sch. Dist. No. 1*, 69 F.3d 1523, 1534 (10th Cir. 1995). Though Mr. Sparks does not allege he is a member of a traditional "protected class," "Title VII's prohibition on discrimination protects members of both historically disfavored groups and historically favored ones." *Bradley v. Denver Health & Hosp. Auth.*, 734 F. Supp. 2d 1186, 1194 (D. Colo. 2010). When a plaintiff alleging discrimination under Title VII belongs to a historically favored group, "the *prima facie* case must be adjusted to account for the plaintiff's historically

8

favored status." *Dickerson v. Bd. of Trustees of Metro. State Univ. of Denver*, No. 19-cv-02087-WJM-SKC, 2021 WL 492483, at *6 (D. Colo. Feb. 10, 2021).

When the plaintiff "is a member of a historically favored group, an inference of invidious intent is warranted only when 'background circumstances support the suspicion that the defendant is that unusual employer who discriminates against the majority.'" *Adamson v. Multi Cmty. Diversified Servs., Inc.*, 514 F.3d 1136, 1149 (10th Cir. 2008) (quoting *Notari v. Denver Water Dep't*, 971 F.2d 585, 588-89 (10th Cir. 1992)). Thus, when a plaintiff belongs to a historically favored group, "in lieu of showing that he belongs to a protected group," the plaintiff must establish "background circumstances" supporting an inference that the defendant discriminates against the majority. *Notari*, 971 F.2d at 589. "Alternatively, a plaintiff alleging reverse discrimination may establish his *prima facie* case by presenting direct evidence of discrimination or 'indirect evidence sufficient to support a reasonable probability that but for the plaintiff's status' he would not have suffered the adverse employment action." *Dickerson*, 2021 WL 492483, at *6 (quoting *Notari*, 971 F.2d at 590 (alteration marks omitted)). For purposes of Rule 12(b)(6), "Plaintiff [need not] establish a prima facie case [of discrimination] in [his] complaint, [but] the elements of each alleged cause of action help to determine whether Plaintiff has set forth a plausible claim." *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012).

As set forth above, the Parties dispute the proper classification of Plaintiff's discrimination claim. Mr. Sparks asserts that his claim is not a reverse discrimination claim because the University's Office of Equity historically favors women in its hiring decisions and thus, he is not a member of a historically favored group in the specific circumstances of this case. [Doc. 16 at 3]. The court respectfully disagrees. Even where male plaintiffs have alleged that a specific employer favors women over men, courts have nevertheless recognized that the male plaintiff is a member

9

of a historically favored group and have considered the discrimination claim as one asserting reverse discrimination. *See, e.g.*, *Larson v. United Air Lines*, 482 F. App'x 344, 348 (10th Cir. 2012) (where the plaintiff alleged that the defendant "favored women managers over men," his claim was nevertheless one of reverse discrimination); *Barros v. City of Albuquerque*, No. CV 04-865 MV/RHS, 2006 WL 8444546, at *4 (D.N.M. Jan. 31, 2006); *Vianes v. Tulsa Educare, Inc.*, No. 15-cv-0308-CVE-PJC, 2016 WL 3746579, at *5 (N.D. Okla. July 8, 2016); *cf. Fischer v. Forestwood Co.*, 525 F.3d 972, 983 n.5 (10th Cir. 2008) (where the plaintiff alleged he was discriminated against as a nonmember of the Fundamentalist Church of Jesus Christ of Latter-Day Saints ("FLDS"), even where only one out of seventy employees of the defendant employer was non-FLDS, the claim was still reviewed as a reverse discrimination claim because "the discrimination [was] targeted against non-FLDS members, and non-FLDS members constitute a majority of society") (emphasis added).

Indeed, the Supreme Court has instructed that "[a] prima facie case under *McDonnell Douglas* raises an inference of discrimination only because we presume the[] acts, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors." *Furnco Const. Corp. v. Waters*, 438 U.S. 567, 577 (1978).  The Tenth Circuit has recognized that a "plaintiff's membership in a historically disfavored group is . . . the predicate upon which the[se] presumptions" rest and are the "procedural embodiment of the recognition that our nation has not yet freed itself from a legacy of hostile discrimination." *Livingston v. Roadway Exp., Inc.*, 802 F.2d 1250, 1251-52 (10th Cir. 1986) (quotations omitted).  Thus, because a traditional prima facie case of discrimination typically requires membership in a protected class, *see, e.g.*, *EEOC v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1192 (10th Cir. 2000), and because Mr. Sparks is instead a member of a historically favored group, he must, "in lieu of showing that he belongs

10

to a protected group, establish background circumstances that support an inference that the defendant is one of those unusual employers who discriminates against the majority." *Notari*, 971 F.2d at 589.

### B.  Analysis

The University's sole argument advocating for dismissal of Plaintiff's Title VII claim asserts that Mr. Sparks has failed to allege those requisite "background circumstances" supporting an allegation that the University's failure to hire him was based on gender discrimination against the majority. [Doc. 14 at 6]. Specifically, the University asserts that Plaintiff's allegations do not suggest that its hiring process discriminated against male applicants, as Plaintiff's own allegations establish that the University used a "screening matrix" to select candidates and interviewed a male candidate for the role, and that the Office of Equity's Title IX Director is a man. [*Id.*]. Moreover, Defendant challenges Plaintiff's reliance on the demographic makeup of the Office of Equity, asserting that the "proper statistical comparison" is not to the Office of Equity staff, but to the applicant pool from which Mr. Sparks was not selected. [*Id.* at 5]. The University asserts that because Plaintiff "makes no allegations about the applicant pool," he "fails to allege the sort of 'background circumstances' that would support an allegation" that the University's failure to hire was discriminatory. [*Id.* at 6]. Finally, the University asserts that Mr. Sparks's allegation that the University has historically favored women is conclusory and unaccompanied by factual support and should be disregarded by the court. [*Id.*].

Mr. Sparks responds that after the University filled the Civil Rights Investigator position, the "demographics of the Office of Equity remained the same, favoring the historically favored group, [women]." [Doc. 16 at 5]. Mr. Sparks emphasizes that the Office of Equity's staff is comprised of eight women and one man and suggests that if the University were not discriminating

11

against applicants, the Office of Equity would be staffed by an equal number of men and women. [*Id.* at 6]. Mr. Sparks maintains that he has established a prima facie case of discrimination based on the allegations in his Complaint. [*Id.* at 4].[5]

The court respectfully disagrees with the University that Plaintiff must include in his Complaint the gender composition of the applicant pool from which he was not hired in order to state a claim of reverse gender discrimination, particularly where the University has cited no legal authority demonstrating that such allegations are mandatory. *See generally* [Doc. 14 at 5].[6] To be

---

[5] Mr. Sparks has attached numerous exhibits to his Response, which he purports to rely upon in opposing the Motion to Dismiss. *See* [Doc. 16 at 16-33]. In considering a motion to dismiss under Rule 12(b)(6), the court's function "is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999) (quotation omitted) (emphasis added). Thus, "it is generally unacceptable for the court to look beyond the four corners of the complaint when deciding a Rule 12(b)(6) motion to dismiss." *Lassiter v. Topeka Unified Sch. Dist. No. 501*, 347 F. Supp. 2d 1033, 1040 (D. Kan. 2004). However, the court may consider documents that are referenced in the complaint if they are central to the plaintiff's claims and are indisputably authentic. *Thomas v. Kaven*, 765 F.3d 1183, 1197 (10th Cir. 2014). Here, some of the documents attached to Plaintiff's Response—such as Plaintiff's resume and cover letter and a document titled "Household Data Annual Averages" that sets out "[e]mployed persons by detailed occupation, sex, race, and Hispanic or Latino ethnicity" but which does not, on its face, have any connection to the University—are not referenced in the Complaint and will not be considered by the court in issuing this Recommendation. In addition, insofar as Mr. Sparks attempts to raise new factual allegations in his Response, *see, e.g.*, [Doc. 16 at 3 ("Defendant has claimed Plaintiff only met two (2) out of the five (5) minimum qualifications."), a plaintiff cannot add factual allegations or attempt to amend a complaint via a response to a motion to dismiss. *Sudduth v. Citimortgage, Inc.*, 79 F. Supp. 3d 1193, 1198 n.2 (D. Colo. 2015). Accordingly, in issuing this Recommendation, the court does not consider facts asserted for the first time in the Response.

[6] The court respectfully concludes that each of the cases cited by Defendant is inapplicable to the instant case, as none of the cases concern the allegations necessary to sufficiently allege "background circumstances that support an inference" that the defendant discriminates against the majority. *Notari*, 971 F.2d at 589. *See Carpenter v. Boeing Co.*, 456 F.3d 1183, 1196 (10th Cir. 2006) (in reviewing summary judgment on a disparate-impact claim, the Tenth Circuit noting that for purposes of *proving* disparate impact in hiring, "the statistics should be based on data with respect to persons qualified for the job."); *Coe v. Yellow Freight Sys., Inc.*, 646 F.2d 444, 452 (10th Cir. 1981) (Tenth Circuit concluding, on review of the district court's exclusion of evidence at trial, that statistical evidence of entire Kansas City metropolitan area was not relevant to the plaintiff's disparate-impact claim); *Hazelwood Sch. Dist. v. United States*, 433 U.S. 299, 310

sure, there is limited case law authority establishing the type of factual averments that are sufficient, at the pleading stage, to allege "background circumstances" suggesting that an employer is the unusual type that discriminates against the majority; determinations as to whether a plaintiff can establish a prima facie case of discrimination are typically made at the summary-judgment stage, as a complaint need not establish a prima facie case to survive a Rule 12(b)(6) motion. *Khalik*, 671 F.3d at 1192. But at this juncture, absent any legal authority supporting Defendant's argument, the court is disinclined to rule that Mr. Sparks, who proceeds pro se, must allege the demographic statistics of the Office of Equity's applicant pool in order to state a discrimination claim, where discovery has not yet begun and there is no indication whether such information is available to Plaintiff. The court thus finds that Defendant's argument as to the "proper statistical comparison" is best reserved for summary judgment, after discovery has been completed and the factual record has been developed. *Cf. Anderson v. Boeing Co.*, 222 F.R.D. 521, 533 (N.D. Okla. 2004) (a critique of the plaintiff's statistical evidence was "more appropriate at the merits stage").[7] With this in mind, the court turns to the sufficiency of Plaintiff's allegations.

In assessing the sufficiency of Plaintiff's allegations, the Tenth Circuit's decision in *Reynolds* is instructive. In *Reynolds*, the white plaintiff alleged that she was discriminated against

---

(1977) (the Supreme Court noting that "[w]hat . . . hiring figures *prove* depends upon the figures to which they are compared" and concluding that only after a determination of the appropriate comparative figures by the trial court "can a foundation be established for deciding whether or not [the defendant] engaged in a pattern or practice of racial discrimination") (emphasis added).

[7] In his Response, Mr. Sparks suggests that "[e]ssentially Defendant claims that Plaintiff's [Complaint] has not shown [a] prima facie [case], with no genuine issues of material fact and, therefore, [Defendant] is entitled to judgment as a matter of law. This is more properly a motion for summary judgment. Therefore, notwithstanding its designation, Defendant's motion to dismiss should be treated, where appropriate, as a motion for summary judgment which has been improperly argued." [Doc. 16 at 9]. The court respectfully disagrees. Defendant's Motion to Dismiss expressly challenges the sufficiency of Plaintiff's allegations, *see* [Doc. 14 at 3-7], and does not argue that there are no genuine disputes of fact. *See generally* [*id.*].

when she applied for but did not receive a promotion to the position of Director of Bilingual Education/ESOL Education. 69 F.3d at 1532. Reviewing the district court's grant of summary judgment in favor of the school-district employer, the Tenth Circuit noted that the plaintiff "was the only white employee in the otherwise all-Hispanic Bilingual/ESOL Department, and Hispanic supervisors made most of the employment decisions of which [the plaintiff] complain[ed]." *Id.* at 1535. While the Tenth Circuit acknowledged that "statistical evidence alone does not establish intentional discrimination, particularly in the context of a bilingual education department where one might reasonably expect to find a disparity in the race of the employees," the court found that such evidence "suffice[d] in this case to establish the 'suspicion that the defendant is that unusual employer who discriminates against the majority.'" *Id.* (quoting *Notari*, 971 F.2d at 589). The court held that the plaintiff had established a prima facie case of discrimination before ultimately concluding that the defendants had carried their burden to establish a non-discriminatory reason for the non-promotion. *Id.*

The Seventh Circuit has ruled similarly. In *Mills v. Health Care Services Corp.*, 171 F.3d 450 (7th Cir. 1999), a male plaintiff alleged that, based on his employer's "disproportionate hiring patterns," his employer "favor[ed] women." *Id.* at 457. The Seventh Circuit held that the plaintiff had established a prima facie case of discrimination by presenting evidence that between 1988 and 1995, "nearly all promotions at the office went to women, and at the time the challenged hiring decision was made, [women] dominated the supervisory positions in the relevant office." *Id.* While the Seventh Circuit expressly stated that those facts were "far from actual evidence of discrimination," the allegations were nevertheless sufficient "to overcome the background presumption that a . . . man was not subject to employment discrimination." *Id.*

14

Following the guidance of the Tenth and Seventh Circuits, other District courts have considered whether a plaintiff who is a member of a historically favored group can nevertheless establish a prima facie reverse discrimination case based on the demographics of the defendant employer's workplace or workforce. *See, e.g.*, *Perez v. Unified Gov't of Wyandotte Cty.*, No. 10-cv-2107-JAR/GLR, 2011 WL 2038689, at *6 (D. Kan. May 25, 2011) (finding that the male plaintiff sufficiently alleged background circumstances supporting an inference of discrimination where he alleged that of 26 employees, only four or five were men and only women were employed in managerial roles); *compare Babbar v. Ebadi*, 36 F. Supp. 2d 1269, 1282 (D. Kan. 1998), *aff'd*, 216 F.3d 1086 (10th Cir. 2000) (on summary judgment, the male plaintiff failed to present sufficient evidence to establish a prima facie discrimination case where "the overwhelming majority of the management department faculty [were] male"); *Sinkhorn v. LaHood*, No. 08C1431, 2010 WL 1031970, at *4 (N.D. Ill. Mar. 17, 2010) (concluding that the male plaintiff failed to establish a prima facie discrimination claim where "many of [his] co-workers and superiors were male" and accordingly could not avoid summary judgment); *cf. Hueston v. City of New York*, No. 00 CIV. 9512 (RCC), 2005 WL 53256, at *10 (S.D.N.Y. Jan. 10, 2005) (under traditional *McDonnell Douglas* framework, finding that the plaintiff had met his prima facie burden and could survive summary judgment based on the fact that the defendant only hired women as assistant chiefs in the litigation department).

Here, Mr. Sparks alleges that he was qualified for the position of Civil Rights Investigator but was not granted an interview, [Doc. 1 at 4, 5], that three of the four candidates selected for interviews were women, [*id.* at 5], that the University ultimately hired a woman for the position in April of 2019, [*id.*], and that on March 26, 2019 and September 19, 2019, the Office of Equity employed eight women and one man, who was the Office's Title IX Director. [*Id.* at 6].

Construing these allegations liberally, as the court must, *see Hall*, 935 F.2d at 1110, and in light of the Tenth Circuit's holding in *Reynolds* that such allegations may suffice to establish a prima facie reverse discrimination claim—a standard which Plaintiff does not have to meet at the pleading stage, *see Khalik*, 671 F.3d at 1192—the court concludes that Mr. Sparks's allegations are sufficient, at this juncture, to allege "background circumstances support[ing] the suspicion that the defendant is that unusual employer who discriminates against the majority." *Adamson*, 514 F.3d at 1148. In so finding, the court emphasizes that such allegations are "far from actual evidence of discrimination," *Mills*, 171 F.3d at 457, and that "statistical evidence alone does not establish intentional discrimination." *Reynolds*, 69 F.3d at 1535; *see also Vianes*, 2016 WL 3746579, at *6 (at summary judgment stage, the fact that the plaintiff was the only male employee at his job site was insufficient to support an inference of discriminatory treatment). Whether Plaintiff ultimately can present sufficient evidence to establish a prima facie discrimination case will be determined at summary judgment or trial. However, Plaintiff's current allegations are sufficient at the pleading stage to survive Defendant's Motion to Dismiss.

Although the University argues that Plaintiff's allegations do not "suggest the hiring process discriminated against male applicants" because he alleges (1) the University used a screening matrix to select candidates; (2) the University interviewed a male candidate; and (3) the Office of Equity's Title IX Director is a man, *see* [Doc. 14 at 5], the court is respectfully unpersuaded by this argument. At the motion-to-dismiss stage, the court must accept all of Plaintiff's allegations as true, liberally construing the allegations in his favor. *Casanova*, 595 F.3d at 1124; *Hall*, 935 F.2d at 1110. In so doing, the allegations highlighted by Defendant do not negate Plaintiff's allegations he was not interviewed for the open position despite possessing all five preferred qualifications, that the Office of Equity hired a woman to fill the position, and that

16

the Office of Equity employs only one man and eight women. [Doc. 1 at 3-5]. And while the University maintains, and the court agrees, that Plaintiff's allegation that the University "has repeatedly and historically granted [women] *de facto* a form a preselected, preferential, discriminatory 'super' protection," [*id.* at 5], is a conclusory allegation not supported by factual averments, [Doc. 14 at 6 (quotation omitted)], even disregarding this conclusory allegation, the court finds that Mr. Sparks has asserted sufficient factual allegations to survive the instant Motion to Dismiss.

For these reasons, the court concludes that Plaintiff's allegations, construed liberally, are sufficient to allege "background circumstances that support an inference that the defendant is one of those unusual employers who discriminates against the majority." *Notari*, 971 F.2d at 589. And because Defendant raises no other argument advocating for dismissal of Plaintiff's Title VII claim, *see generally* [Doc. 14], the court respectfully **RECOMMENDS** that the Motion to Dismiss be **DENIED** insofar as it seeks dismissal of Plaintiff's Title VII claim under Rule 12(b)(6).

## CONCLUSION

For the reasons stated herein, this court respectfully **RECOMMENDS** that:

(1) Defendant's Motion to Dismiss Plaintiff's Complaint Under F.R.C.P. 12(b)(1) and 12(b)(6) [Doc. 14] be **GRANTED IN PART** and **DENIED IN PART**; and

(2) Plaintiff's claim under the Age Discrimination in Employment Act be **DISMISSED without prejudice**.[8]

---

[8] Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or

DATED:  April 12, 2022
BY THE COURT:

_____
Nina Y. Wang
United States Magistrate Judge

---

for appellate review." *United States v. One Parcel of Real Prop. Known As 2121 E. 30th St.*, 73 F.3d 1057, 1060 (10th Cir. 1996).  Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge.  *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Refining Sys., Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling).  *But see Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).